**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ROBERT B. CONNELLY,<br>*Plaintiff*,<br>v.<br>THE HOUSING AUTHORITY OF THE CITY OF HAGERSTOWN MARYLAND,<br>*Defendant* | No. 26-cv-0325-ABA |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Robert Connelly alleges that he was discriminated against in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, when Defendant, the Housing Authority of the City of Hagerstown, Maryland, failed to engage in an interactive process to identify reasonable accommodations for his alleged disability and by firing him. For the reasons that follow, the Court will deny the motion to dismiss with the exception that it will strike Plaintiff's request for punitive damages, which Plaintiff does not oppose. ECF No. 11 at 2.[1]

## I. FACTUAL AND PROCEDURAL HISTORY[2]

Plaintiff worked for Defendant as a maintenance employee for approximately fifteen years. ECF No. 2 ¶¶ 1, 10. Plaintiff sustained a work-related back injury on December 9, 2024. *Id.* ¶ 11. Plaintiff filed a workers' compensation claim and, as part of that process, Defendant received written reports and recommended restrictions from

[1] Page citations are to ECF pagination, which may differ from the parties' page numbers.

[2] At the pleadings stage, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Plaintiff's health care providers, including "lifting limits of approximately 5 to 1 pounds, and bending/twisting restrictions." *Id.* ¶¶ 13, 15. "Defendant did not consistently follow these restrictions" and as a result Plaintiff re-injured his back at work on February 19, 2025. *Id.* ¶ 15. After a hearing on June 16, 2025, the Workers' Compensation Commission ordered that "Plaintiff must be permitted to work on a light duty basis pending further evaluation and treatment." *Id.* ¶¶ 19–21. Plaintiff alleges that these actions constituted his requests for reasonable accommodations under the ADA. *Id.* ¶¶ 15, 41. Plaintiff further alleges that Defendant provided an accommodation and placed him on light duty beginning June 26, 2025 and assigned him to a "'Meet & Greet' position" at its central office. *Id.* ¶¶ 22–23. Plaintiff remained in the light duty position through September 8, 2025 and performed tasks "such as delivering notices to tenants, walking various properties with contractors to inspect different houses, providing access and meet/greet services, performing inventory of supplies, general cleaning of the area occupied by tenants, transferring gallons of paint to smaller containers, and similar light duty tasks." *Id.* ¶ 24.

Plaintiff alleges that on September 8, 2025, Defendant fired him "relying on (1) the exhaustion of [his Family Medical Leave Act ("FMLA")] leave and (2) the Plaintiff's present inability to perform (without accommodation) the essential functions of his job." *Id.* ¶ 27. Plaintiff alleges that "[b]efore firing [him], Defendant did not engage in the ADA interactive process or any individualized assessment as required by the law," and "did not evaluate continuation of light duty, temporary leave as an accommodation, or *any* potential accommodation." *Id.* ¶¶ 28–29.

On September 19, 2025, Defendant issued a grievance response refusing to reinstate Plaintiff and explained that "[i]n accordance to company policy and the CBA,

480 hours [of FMLA leave] was afforded Robert. Robert exceeded the maximum allowable 480 hours and is unable to perform the full function of the position, therefore he will not be reinstated." *Id.* ¶ 31. According to the allegations in the complaint, Plaintiff's "impairment was . . . temporary" and his "treating provider released him to full, unrestricted duty" on December 23, 2025. *Id.* ¶¶ 34–35.

Plaintiff filed his complaint on January 26, 2026, alleging that "Defendant's termination decision was based, at least in part, on Defendant's perception that Plaintiff was disabled and on Plaintiff's documented history of medical impairment." *Id.* ¶ 37. The complaint includes four counts under the ADA for failure to accommodate Plaintiff's disability and for discriminatory discharge based on actual disability, perceived disability, and a record of disability. *Id.* ¶¶ 38–63. Defendant filed a motion to dismiss or in the alternative for summary judgment. ECF No. 7. Plaintiff filed a response and Defendant filed a reply. ECF Nos. 11 & 12. Plaintiff also filed a notice of supplemental authority. ECF No. 13. Because the Court concludes that it is unnecessary and premature to convert the motion into one for summary judgment, it will treat the motion as a motion to dismiss.

## II. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As stated, when considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King*, 825 F.3d at 212. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. DISCUSSION

Most of Defendant's arguments and the authority it relies on can only be properly considered after discovery and in connection with a motion for summary judgment. Defendant contends that Plaintiff has not alleged a *prima facie* case, but that is not a pleading requirement. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 515 (2002). Instead, a plaintiff "is 'required to allege facts to satisfy the elements of a cause of action created by th[e] statute.'" *Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 874 (4th Cir. 2020) (applying *Swierkiewicz* to ADA and related claims and quoting *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015)).

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to," among other things, the "discharge of employees," including by failing to make "reasonable accommodations" for "an otherwise qualified individual with a disability unless . . . the accommodation would impose an undue hardship." 42 U.S.C. § 12112(a), (b)(5). At this point for Plaintiff's ADA claims he need only allege "that (1) [he] had a disability as defined in the ADA; (2) [he]

was a 'qualified individual,' i.e., able to perform the essential functions of [his] job with or without reasonable accommodation; and (3) [his] employer took an adverse action against [him] on account of [his] disability." *Craddock v. Lincoln Nat. Life Ins. Co.*, 533 F. App'x 333, 336 (4th Cir. 2013) (citing *Young v. United Parcel Serv., Inc.*, 707 F.3d 437, 443 (4th Cir. 2013)). Where, as here, a plaintiff alleges that he or she was denied a reasonable accommodation in the form of reassignment, the plaintiff must also allege that there was a vacant position he could perform. *See id.* at 337 ("The ADA expressly recognizes 'reassignment to *a vacant position*' as a reasonable accommodation.") (emphasis added, quoting 42 U.S.C. § 12111(9)(B)).

Defendant's only argument that goes to these requirements rather than summary judgment issues (*e.g.*, to the existence of a *prima facie* case, the burden shifting framework of *McDonnell Douglas*, and affirmative defenses such as the undue burden defense), and does not require discovery, is that Plaintiff is not a qualified individual because, with or without accommodation, he has not alleged that he can perform the essential functions of his maintenance job, which requires more than light-duty work, or that a vacate position existed for which he was qualified. ECF No. 7 at 12–15.

But, drawing all reasonable inferences in Plaintiff's favor, he has adequately alleged that an available "'Meet & Greet' position" existed and that he requested the light-duty position as an accommodation for his alleged disability through his and his physician's communications with Defendant. ECF No. 2 ¶¶ 15, 23, 41; *see Kelly v. Town of Abingdon, Virginia*, 90 F.4th 158, 167–68 (4th Cir. 2024) (holding that "an employee need not formally invoke the magic words 'reasonable accommodation,'" but that "to place the employer on notice, there must be a logical bridge connecting the employee's disability to the workplace changes he requests") (cleaned up). And because Plaintiff

alleges that the accommodation he requested was a (possibly temporary) transfer to an available light-duty position, whether Plaintiff could perform the essential functions of his maintenance position is not the relevant inquiry. Instead, the inquiry is whether he could perform the essential functions of the existing light-duty position he allegedly requested.

In *Dieng v. Orkin, LLC*, Dieng, who was a pest control technician, injured his kneecap and was forced to go on unpaid leave. 185 F.4th 107, 111–12 (4th Cir. 2026). Dieng requested a transfer to an existing light-duty position as an accommodation, but Orkin would not engage with him on that request. *Id.* After sixteen months of unpaid leave, Dieng resigned. *Id.* Dieng sued Orkin pursuant to the ADA. "The district court concluded that summary judgment was appropriate because, even with reasonable accommodation, Dieng could no longer perform the essential functions of his former position as a pest control technician" due to its postural and heavy lifting requirements. *Id.* at 115. The Fourth Circuit reversed and remanded. It concluded that the district court should have instead "consider[ed] whether Dieng could perform the essential functions of *the light-duty positions he desired*" as an accommodation for his disability. *Id.* (emphasis added). The *Dieng* court explained that although "it is generally preferable for an employer to provide an accommodation that allows a disabled employee to remain in his current position," "[w]here an employee can no longer remain in his current position because of disability . . . the ADA requires the employer to determine whether the employee can work in a different position without creating an undue burden for the employer." *Id.* at 119. "Where a disabled employee seeks an accommodation of reassignment, the employee must be able to show that he can perform the essential functions of the position he *desires*, not the essential functions of

the job he holds." *Id.* at 115. Thus the fact "[t]hat Dieng could no longer perform all the duties of a pest control technician is . . . beside the point"; instead, the question was whether Dieng "produced evidence that he could perform the essential job functions of either the customer service or the sales representative position, the light-duty positions he requested." *Id.*

Plaintiff has alleged that he could perform the essential functions of the available light-duty position he requested and was performing, and Defendant has not argued otherwise. Therefore, Defendant's argument that Plaintiff categorically was not a qualified individual under the ADA because he could not perform the essential functions of his maintenance position fails under the analysis in *Dieng*. After drawing all reasonable inferences in Plaintiff's favor, Plaintiff has alleged that he had a disability (albeit a temporary one), ECF No. 2 ¶¶ 11–16, was a qualified individual who could perform the essential functions of an available position he requested (and received), *id.* ¶¶ 15, 23–24, and that Defendant took adverse actions against Plaintiff in the form of a failure to engage in the interactive process and by firing him. *Id.* ¶¶ 27–28. Thus, Plaintiff has alleged facts sufficient to state an ADA discrimination claim and the motion to dismiss will be denied.

As Defendant argues, there are many fact questions that ultimately must be answered regarding Plaintiff's claims, including the nature of the alleged disability, whether Defendant knew about it, and whether Plaintiff actually requested an accommodation. The parties will also need to address whether the light-duty work Plaintiff was performing was actually part of an "available position" that Defendant sought to otherwise fill (as existed in *Dieng*) or whether that position created an undue burden on Defendant because it was unnecessary "make-work" provided to Plaintiff

merely to avoid worker's compensation costs. Similarly, in connection with Defendant's alleged failure to engage in the interactive process, discovery on the availability of other light-duty positions Plaintiff could have transferred to had Defendant offered them will be necessary. If ultimately there were no open positions Plaintiff could transfer to (either permanently or temporarily) without causing Defendant undue hardship, the holdings in *Dieng* will not be particularly instructive. But as discussed above, for the purposes of the motion to dismiss, Plaintiff has adequately alleged the elements of his ADA claims.

## IV. CONCLUSION AND ORDER

For these reasons, the motion to dismiss (ECF No. 7) is GRANTED in part and DENIED in part. The motion is GRANTED in that Plaintiff's request for punitive damages is stricken. The motion is DENIED in all other respects.

Date: September 22, 2026

/s/
Adam B. Abelson
United States District Judge